UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| JAMES CALVIN MITCHELL | * | CIVIL ACTION NO. 13-1984 |
| VERSUS | * | JUDGE ELIZABETH E. FOOTE |
| CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

James Calvin Mitchell protectively filed the instant applications for Title XVI Supplemental Security Income payments and Title II Disability Insurance Benefits on January 14, 2011, and February 3, 2011, respectively. (Tr. 124-131). He alleged disability as of September 15, 2010, because of a bad right knee, a nervous condition, high blood pressure, depression, and anxiety. (Tr. 142). The state agency denied the claims at the initial stage of the administrative process. (Tr. 55-84). Thereafter, Mitchell requested and received a January 12, 2012, hearing before an Administrative Law Judge ("ALJ"). (Tr. 21-54). In a May 25, 2012, written decision, however, the ALJ determined that Mitchell was not disabled under the Act, finding at step four of the sequential evaluation process that he was able to return to his past relevant work as a

kitchen helper. (Tr. 6-17). Mitchell appealed the adverse decision to the Appeals Council. On April 19, 2013, however, the Appeals Council denied Mitchell's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On June 20, 2013, Mitchell sought review before this court. He alleges that the ALJ's mental residual functional capacity assessment is not supported by substantial evidence and is tainted by legal error.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program

2

throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make

an adjustment to other work in the economy.
See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### The ALJ's Findings

**I.     Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that Mitchell had not engaged in substantial gainful activity during the relevant period. (Tr. 11). At step two, she found that Mitchell suffers severe impairments of chronic right knee pain, status post two surgeries; major depressive disorder with psychotic features; generalized anxiety disorder; and a pain disorder associated with both psychological factors and a general medical condition. (Tr. 11-12).[1] She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 12-13).

**II.    Residual Functional Capacity**

The ALJ next determined that Mitchell retained the residual functional capacity ("RFC")

---

[1] The ALJ determined that Mitchell's history of small bowel obstruction and alcoholism were not severe impairments. (Tr. 12).

to perform medium work,[2] except that mentally, his ability to understand, remember and carry out simple tasks was limited to jobs that have a reasoning development level no higher than 2. (Tr. 14).

### III. Step Four

At step four, the ALJ employed a vocational expert to find that Mitchell was able to return to his past relevant work as a kitchen helper, Dictionary of Occupational Titles ("DOT")

---

[2] Medium work is defined and explained by Social Security Ruling 83-10:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10.

Code 318.687-010, as that job is *generally* performed in the national economy. (Tr. 16-17).[3]

### Discussion

At the outset, the court observes that Mitchell does not contest the sufficiency of the ALJ's resolution of the effects of his physical impairments on his ability to work. Indeed, the ALJ grounded her physical RFC on the essentially benign findings rendered by the consultative physical examiner, Amy Rowell, M.D., as well as the impression of plaintiff's chiropractor, Chad Ledet, that, despite an October 24, 2011, car accident, Mitchell was able to return to the normal duties of his previous occupation so long as he did not overexert himself. (Tr. 265-269, 297-305). Thus, the undersigned finds that the ALJ's physical RFC is supported by substantial evidence and remains free of legal error.

Instead, plaintiff focuses his arguments on the ALJ's consideration of the effects of his mental impairments. Plaintiff initially argues that the ALJ committed reversible error when she failed to explain what weight she assigned to the opinion of the sole, examining mental health expert, Thomas Staats, Ph.D.[4] The Commissioner's own regulations require the Commissioner

---

[3] Past relevant work is defined as "the actual demands of past work or 'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61).

[4] On June 17, 2011, Mitchell underwent a consultative psychological examination administered by Thomas Staats, Ph.D. (Tr. 273-275). Mitchell told Staats that he was unable to work because of severe anxiety when around people that caused him to shake. *Id*. He also reported a mixture of panic and anxiety attacks that occurred once or twice per month. *Id*. Mitchell explained that he developed emotional problems at age 22. *Id*. Staats documented that Mitchell appeared to be in acute distress with notable tremulousness and restlessness. *Id*. However, his thinking remained intact, logical, and coherent. *Id*. He was oriented to person, time, place, and situation, with an adequate fund of general information. *Id*. His short term and intermediate memory remained intact, and he was a reliable historian. *Id*. Overall, his concentration was adequate. *Id*. However, his persistence was poor. *Id*. He also interacted poorly on a 1:1 basis, with marginal social judgment. *Id*. Staats diagnosed major depressive

to evaluate every medical opinion received, and unless the opinion of a treating source is accorded controlling weight, then the Commissioner must apply several factors to decide the appropriate weight to assign any medical opinion. 20 C.F.R. § 404.1527(c). Further, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).

Where the rights of individuals are affected, an agency must follow its own procedures, even where the procedures are more rigorous than otherwise would be required (*e.g.* by case law). *See Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981) (citations omitted). If an agency violates its own rules, with resulting prejudice, then the underlying proceedings are tainted, and any resulting actions cannot stand. *Id*. Nonetheless, "[p]rocedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

To the extent that the ALJ erred by failing to state explicitly what weight she assigned to Dr. Staats' findings, the court finds that any error was harmless because the ALJ stated that she assigned great weight to the opinion of the non-examining agency psychologist, William Berzman, Ph.D., who, in turn, premised his findings in no small part on the mental status examination administered by Dr. Staats. *See* Tr. 16, 62-64.[5] Indeed, Dr. Berzman indicated on

---

disorder with psychotic features, generalized anxiety disorder, somnambulism, alcohol dependence, and pain disorder. *Id*.

[5] On July 1, 2011, non-examining agency psychologist, William Berzman, Ph.D. reviewed the record, including the report of the consultative psychologist, and a mental RFC form. (Tr. 62-64). He opined that Mitchell's ability to understand, remember, and carry out short and simple instructions was not significantly limited. *Id*. However, his ability to

his report that no other medical source had rendered limitations or restrictions more restrictive than his own findings. Tr. 64. Of course, "an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and *do not contradict those of the examining physician*." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis added).

      Plaintiff also argues, to greater effect, that the ALJ's RFC limiting him to understanding,

---

understand, remember, and carry out *detailed* instructions was moderately limited. *Id*. Although Mitchell's ability to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances was not significantly limited, his ability to maintain attention and concentration for extended periods was moderately limited. *Id*. Similarly, he experienced no significant limitation in his ability: 1) to sustain an ordinary routine without special supervision 2) to work in coordination with, or in proximity to others without being distracted by them; and 3) to make simple work-related decisions. *Id*. However, his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was moderately limited. *Id*. He also experienced a moderate limitation in his ability to get along with co-workers without distracting them or exhibiting behavorial extremes. *Id*. In addition, his ability to respond appropriately to changes in the work setting was moderately limited, as was his ability to use realistic goals or to make plans independently of others. *Id*.
    Despite these limitations, however, Berzman concluded that Mitchell appeared to have average mental ability, the ability to understand, remember and carry out simple instructions, the ability to maintain attention for at least a two hour time period, and to engage in appropriate social interaction. (Tr. 64). Accordingly, Berzman opined that he should be able to meet the requirements of a routine work setting. *Id*.
    In his brief, plaintiff urges the court to endorse a definition for "moderate" limitation that the Commissioner proposed in 1991, but apparently never adopted. (Pl. Memo., pg. 10). More recently, however, the ALJs have employed (and the Fifth Circuit has declined to disturb) a definition of "moderate" that is much less limiting. *See Giles v. Astrue*, 433 Fed. Appx. 241 (5th Cir. July 18, 2011) (unpubl.); *Cantrell v. McMahon*, 227 Fed. Appx. 321, 2007 WL 557567 (5th Cir. 2007) (unpubl.); *Beene v. McMahon*, 226 Fed. Appx. 348, 2007 WL 836926 (5th Cir. 2007) (unpubl.); and *Zills v. Barnhart*, 220 Fed. Appx. 289, 2007 WL 627605 (5th Cir. Feb. 27, 2007). By his summation, it is apparent that Berzman intended the latter, less-debilitating version of "moderate" in his assessment.

remembering, and carrying out simple tasks as demanded in jobs rated by the Dictionary of Occupational Titles at reasoning development level 2 (or below), failed to incorporate all of the limiting effects of his mental impairments, as recognized and endorsed by Drs. Staats and Berzman. He stresses that a restriction to understanding, remembering, and carrying out simple tasks fails to account for the additional, myriad limitations regarding social interaction, adaptation, persistence, concentration, and pace.[6]

The undersigned agrees that the ALJ's RFC does not incorporate all of the mental limitations recognized by the psychologists, and that this omission undermines the basis for the vocational expert's opinion, and the ALJ's concomitant finding that Mitchell could return to his past relevant work as a kitchen helper *as that job is generally performed in the national economy*. However, Mitchell's mental impairments were longstanding, and by his own account, he had suffered emotional problems since the age of 22. Despite these impairments, Mitchell was able to perform his past relevant work as a kitchen helper and, for that matter, as a maintenance helper/grounds keeper. There is no evidence that Mitchell's mental impairments subsequently worsened or that, as of the alleged onset of disability or thereafter, they caused new limitations that he did not experience while working. In fact, Mitchell conceded that he did not stop working because his conditions prevented him from doing so; rather, he ceased working because his employer did not need him anymore. (Tr. 32-34, 142).[7]

---

[6] Albeit, other courts in this circuit have held that an RFC limited to simple work reasonably incorporates a moderate or even *marked* limitation in concentration, persistence, or pace. *Reid v. Astrue*, Civil Action No. 10-0237, 2011 WL 4101302 (S.D. Miss. Aug. 15, 2011) *report and recommendation adopted,* 2011 WL 4101277 (S.D. Miss. Sept. 8, 2011); *Madrid v. Colvin*, Civil Action No. 12-800, 2013 WL 6641305 (N.D. Tex. Dec. 17, 2013); *Cornejo v. Colvin*, Civil Action No. 11-470, 2013 WL 2539710 (W.D. Tex. June 7, 2013).

[7] In *Johnson v. Bowen*, the Fifth Circuit found substantial evidence to support the Commissioner's determination that a claimant could return to his past relevant work under

Furthermore, Mitchell indicated on a disability function report, that he was able to pay attention for short periods, follow spoken instructions well, and handle changes in routine - "OK." (Tr. 173-174). In addition, at the hearing, Mitchell testified that he does not really have trouble getting along with others. (Tr. 44-45). However, he "always has problems with [co-workers] sometimes." *Id*. Nonetheless, he conceded that he had never been discharged from a job because of conflict. *Id*. In other words, plaintiff's own assessment of the effects of his impairments is consistent with Dr. Berzman's conclusion that Mitchell was able to meet the requirements of a routine work setting. *Id*.[8]

In sum, plaintiff's testimony and representations, combined with his ability to work for years despite the presence of his mental impairments, provide substantial support for the conclusion that he was able to return to past relevant work as a kitchen helper and/or maintenance helper/grounds keeper – *as he actually performed the work*. See Tr. 165, 167.[9] Thus, any error in the ALJ's mental RFC is harmless.[10]

### Conclusion

The ALJ in this case was tasked with determining whether plaintiff was disabled. In so doing, she considered all of the record evidence. Admittedly, this court has expanded upon some

---

circumstances where the claimant was able to work for several years despite the presence of the alleged disabling mental impairment. *Johnson v. Bowen*, 864 F.2d 340, 347-348 (5th Cir. 1988) (citation omitted).

[8] The consultative physical examiner also noted that Mitchell was able to hold a conversation, respond appropriately to questions, and to carry out and remember instructions. (Tr. 267).

[9] According to plaintiff, these jobs did not require him to lift and carry more than ten pounds. *Id*.

[10] Plaintiff does not allege any error with the ALJ's step four determination that is not otherwise subsumed within his challenge to the sufficiency of the ALJ's mental RFC.

of the reasoning provided by the ALJ for her decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. That exception is present here. Although the Commissioner's decision obviously is not blemish-free, procedural perfection in the administrative process is not required, and the alleged errors do not undermine the court's confidence in the ultimate decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Mitchell was not disabled under the Social Security Act is supported by substantial evidence and remains free of reversible error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 22nd day of July, 2014.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE